**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**DAVID M. DRISCOLL,** *et al.,*

*Plaintiffs,*

v.                                    **Civil Action No. 12-0690 (ESH)**

**GEORGE WASHINGTON UNIVERSITY,**

*Defendant.*

---

**MEMORANDUM OPINION**

David Driscoll, a former employee of George Washington University ("GWU"), has sued on behalf of himself and others similarly situated alleging that GWU violated federal and D.C. law by failing to pay overtime wages to certain employees.  (First Amended Class Action Complaint, June 29, 2012 [Dkt. No. 8] ("Am. Compl.").)  GWU moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (July 3, 2012 [Dkt. No. 9] ("GWU Mot.")), and in opposing GWU's motion (July 17, 2012 [Dkt. No. 11] ("Driscoll Opp'n")), Driscoll filed a cross-motion to amend his complaint (July 17, 2012 [Dkt. No. 12] ("Driscoll Mot.")), which GWU has, in turn, opposed (Aug. 3, 2012 [Dkt. No. 16] ("GWU Opp'n")).  Both parties filed replies in support of their respective motions.  (*See* GWU Reply in Support of its Motion to Dismiss, July 27, 2012 [Dkt. No. 15] ("GWU Reply"); Driscoll Reply in Support of his Motion to Amend, August 13, 2012 [Dkt. No. 18] ("Driscoll Reply").)  For the reasons stated, the Court will deny GWU's motion to dismiss and grant in part and deny in part Driscoll's motion to amend.

**BACKGROUND**

Driscoll alleges that he was employed as an Executive Coordinator at GWU from April

2010–February 2012.  (Am. Compl. ¶ 38.)  With other Executive Coordinators, Executive Aides, Executive Assistants, Executive Support Assistants, and Executive Associates, he was classified by GWU as an exempt employee under the federal Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and similar D.C. Code provisions, and was not paid "overtime wages for all hours worked over 40 in a week."  (Am. Compl. ¶ 40.)  In 2011, GWU reclassified these employees as non-exempt "under the FLSA and D.C. Code and began to pay them overtime wages" (*id.* ¶ 41), and "made a payment to [each of] them for back wages owed for the period two years prior to the reclassification."  (*Id.* ¶ 44.)  Driscoll alleges, however, that these payments were calculated according to an improper method, the "'half-time' method" (*id.* ¶ 45), that "resulted in [the employees] receiving only one-third or less of the back overtime wages due under the FLSA and D.C. Code."  (*Id.* ¶ 46.)  Driscoll further alleges that the "payments for back wages were not based on the overtime hours [the employees] actually worked."  (*Id.* ¶ 47.) Finally, Driscoll claims that when "he questioned [whether GWU's] payment of back overtime wages [was] in violation of the FLSA, 29 U.S.C. § 215," GWU "discriminated against [him] by discharging him."  (Am. Compl. ¶ 55.)

Driscoll's first amended complaint alleges four causes of action: 1) individual and collective-action claims under the FLSA for overtime wages; 2) an individual claim under the FLSA for retaliation; 3) individual and collective-action claims under the D.C. Minimum Wage Act Revision Act, D.C. Code §§ 32-1001 *et seq.* ("DCMWA"), for overtime wages; and 4) individual and class-action claims under the D.C. Wage Payment and Collection Law, D.C. Code §§ 32-1301 *et seq.* ("DCWPCL"), for failure to pay wages when due.[1]  Driscoll's proposed

---

[1] In the first amended complaint, Driscoll's collective-action claims are made pursuant to the specific collective-action provisions of the relevant statutes, which are opt-in.  *See* 29 U.S.C.

second amended complaint, along with alleging additional facts in response to GWU's motion to dismiss, asserts the same First, Second, and Fourth causes of action, but with regard to the Third Cause of Action alleges an *opt-out* class action, pursuant to Fed. R. Civ. P. 23, under the DCMWA.  (*See* Driscoll Mot., Ex. A ("Second Am. Compl.").)  GWU argues that Driscoll's first amended and proposed second amended complaints fail to state a claim under Rule 12(b)(6), and it opposes Driscoll's motion to amend, claiming prejudice.

## ANALYSIS

## I.      RULE 15: LEAVE TO AMEND

Driscoll has already amended his complaint once, "as a [m]atter of [c]ourse," Fed. R. Civ. P. 15(a)(1), and because GWU has not consented to his amending a second time, he may amend again "only with . . . the [C]ourt's leave."  Rule 15(a)(2).

Rule 15 instructs courts to "freely give leave [to amend] when justice so requires," *id.*, and the "'rule is to be construed liberally.'"  *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 218 (D.C. Cir. 2010) (quoting *Belizan v. Hershon*, 434 F.3d 579, 582 (D.C. Cir. 2006)).  In *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court instructed:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, [or] undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Id.* at 182.  "[T]he grant or denial of an opportunity to amend is within [the  Court's] discretion

---

§ 216(b) (FLSA); D.C. Code § 32-1012(b) (DCMWA).  The first amended complaint's sole class-action claim, under the DCWPCL, is made pursuant to Fed. R. Civ. P. 23, which is opt-out. *See generally Knepper v. Rite Aid Corp.*, 675 F.3d 249, 253–57 (3d Cir. 2012) (describing the history of the FLSA's opt-in collective-action provision and its relation to Rule 23).

. . . ." *Id.* "Because amendments are to be liberally granted, the non-movant bears the burden of showing why an amendment should not be allowed." *Abdullah v. Washington*, 530 F. Supp. 2d 112, 115 (D.D.C. 2008); *see Hajjar-Nejad v. George Washington Univ.*, --- F. Supp. 2d ----, 2012 WL 89973, at *7 (D.D.C. 2012) ("the party opposing amendment bears the burden of coming forward with a colorable basis for denying leave to amend").

GWU argues that Driscoll's motion to amend "should be denied based on [Driscoll's] unexplained delay and [re]sulting prejudice to [GWU]" (GWU Opp'n at 20), but the Court concludes that GWU has not demonstrated a colorable basis for denying Driscoll leave to amend on these grounds. In these circumstances, it is immaterial that Driscoll has already amended his complaint once, and that at the time he filed his first amended complaint he had knowledge of the additional factual allegations in his proposed second amended complaint. "[D]elay alone is [typically] not a sufficient reason for denying leave," *Caribbean Broadcasting System*, *Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1084 (D.C. Cir. 1998) (internal quotation marks and citation omitted), and courts have granted leave to amend even where plaintiffs have had "five previous attempts to state [a] cognizable claim . . . because [the] Federal Rules suggest [that the] 'artless drafting of a complaint should not allow for the artful dodging of a claim.'" *Id.* (quoting *Poloron Prods., Inc. v. Lybrand Ross Bros. & Montgomery*, 72 F.R.D. 556, 561 (S.D.N.Y. 1976)). Here, Driscoll's original complaint was filed in April 2012, his first amended complaint was filed in June 2012, and he moved to amend in July 2012. This case is not even "prolonged," and furthermore, "the prolonged nature of a case does not itself affect whether the plaintiff may amend its complaint." *Id.*

Moreover, where, as here, the party opposing amendment has not put forward a colorable basis of prejudice, "the contention of undue delay is [even] less persuasive." *Clark v. Feder*

4

*Semo & Bard, P.C.*, 560 F. Supp. 2d 1, 5 (D.D.C. 2008).  Discovery has yet to begin.  *Cf.*

*Abdullah*, 530 F. Supp. 2d at 115 (denying defendants leave to amend their answer where their

motion was filed five years after the case was filed and where "significant discovery [had] taken

place, including document discovery, numerous depositions, and the hiring of an expert").

Indeed, all that has happened so far is the filing of the pleadings presently before the Court,

wherein all parties have had ample opportunity to address the issues at hand.  There is no

prejudice here.  To the contrary, while the Court need not address the sufficiency of the

allegations in Driscoll's first amended complaint, there is no doubt that GWU is *benefited* by the

additional specificity Driscoll provides in his proposed second amended complaint.  Finally,

GWU's half-hearted argument that Driscoll acted in bad faith is without merit.  GWU can point

to no evidence of a dilatory motive or of bad faith on Driscoll's part.

 GWU's primary argument for denying Driscoll's motion is that the proposed second

amended complaint "would not survive a motion to dismiss" such that amendment would be

futile.  *In re Interbank Funding Corp. Securities Litigation*, 629 F.3d at 218.  Because review for

futility "is, for practical purposes, identical to review of a Rule 12(b)(6)" motion to dismiss, *id.* at

215–16 (internal quotation marks and citation omitted), GWU's futility arguments are addressed

below, as part of the Court's consideration of GWU's arguments for dismissal.

## II. RULE 12(B)(6): LEGAL SUFFICIENCY OF DRISCOLL'S ALLEGATIONS

 In order to withstand a Rule 12(b)(6) motion, a complaint need only contain "'a short and

plain statement of the claim showing that the pleader is entitled to relief,'" *Bell Atlantic*

*Corporation v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)), "in order to

'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.*

(alteration in the original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  The notice

pleading rules are "not meant to impose a great burden on a plaintiff," *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347 (2005) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513–515 (2002)), and a complaint need not contain "detailed factual allegations." *Twombly*, 550 U.S. at 555 (citing *Conley*, 355 U.S. at 47).   Nevertheless, a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action," *id.* at 555, and his "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.* (citing *Twombly*, 550 U.S. at 556).

This Court need not accept as true any legal conclusions couched as factual allegations or inferences unsupported by facts in Driscoll's proposed second amended complaint.   *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006).   Yet, in determining whether the factual allegations which are entitled to an assumption of truth are "enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, the Court must grant Driscoll "'the benefit of all inferences that can be derived from the facts alleged.'"   *Am. Nat'l Ins. Co. v. F.D.I.C.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

GWU argues that all four of the causes of action in Driscoll's proposed second amended complaint must be dismissed pursuant to Rule 12(b)(6).   The Court will address the sufficiency of each cause of action in turn.

**A.      First Cause of Action: Individual and Collective-Action Claims under the FLSA for Overtime Wages**

The FLSA's overtime provision "ordinarily requires employers to pay employees time-and-one-half for hours worked beyond forty per week unless the employees are exempt."  *Smith v. Gov't Emps. Ins. Co.*, 590 F.3d 886, 888 (D.C. Cir. 2010); *see* 29 U.S.C. § 207(a).  In order to state a claim under the FLSA for unpaid overtime, a plaintiff must allege that: (1) the defendant employed him; (2) the defendant is an enterprise engaged in interstate commerce covered by the FLSA or the plaintiff is otherwise covered by the FLSA; (3) the plaintiff actually worked in excess of a 40-hour work week; and (4) the defendant failed to pay him overtime wages as required by law.  *See, e.g.*, *Pruell v. Caritas Christi*, 678 F.3d 10, 12 (1st Cir. 2012); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1277 n.68 (11th Cir. 2008); *Butler v. DirectSat USA, LLC*, 800 F. Supp. 2d 662, 667 (D. Md. 2011).

The allegations in Driscoll's proposed second amended complaint state a facially plausible claim that GWU is liable under the FLSA's overtime provisions.  Driscoll alleges that he was employed at GWU (Second Am. Compl. ¶ 39), that FLSA applies to GWU (*id.* ¶ 28), that he and other similarly-situated employees regularly worked more than 40 hours a week, and that GWU did not pay them overtime wages for all overtime hours worked.  (*Id.* ¶¶ 43–44.)  This suffices.

GWU's arguments to the contrary fail.  True, "[i]n the wake of the *Iqbal* and *Twombly* decisions, courts across the country have expressed differing views as to the level of factual detail necessary to plead a claim for overtime compensation under [the] FLSA."  *Butler*, 800 F. Supp. 2d at 667.  Some courts have held, as GWU argues, that plaintiffs must allege the number of overtime hours worked for which overtime wages were not received.  *See id.* at 667–68

(collecting cases).  Other courts have held, as Driscoll urges, that it is sufficient for a plaintiff to allege, with some specificity, that he worked overtime and did not receive compensation.  *See id.* at 668 (collecting cases).  The Court agrees that this "more lenient approach is appropriate." *Id.* at 668.  Where a complaint alleges, as Driscoll's proposed second amended complaint does, that overtime hours were worked but overtime wages were not received, it sufficiently "'state[s] a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  An allegation of a specific number of hours adds nothing as far as the plausibility standard is concerned, for there is no *de minimis* exception or other threshold applicable to a FLSA overtime claim.[2]  *See Sec'y of Labor v. Labbe*, 319 Fed. App'x 761, 763 (11th Cir. 2008) (unpublished) ("Unlike the complex antitrust scheme at issue in *Twombly* that required allegations of an agreement suggesting conspiracy, the requirements to state a claim of a FLSA violation are quite straightforward.").  Furthermore, requiring Driscoll to allege the number of overtime hours he worked without compensation could be pointless when that figure may be subject to amendment after discovery and could also be contested at trial.  The Court therefore concludes that Driscoll's First Cause of Action will not be dismissed.

### B.      Second Cause of Action: Individual Claim under the FLSA for Retaliation

In arguing for dismissal of Driscoll's Second Cause of Action, which alleges that GWU violated the FLSA by firing Driscoll after he complained to GWU officials about their handling of overtime pay, GWU protests that Driscoll's allegations cannot suffice because he does not claim that GWU fired him in response to his filing an official FLSA complaint in a court of law.

---

[2] In *Encinas v. J. J. Drywall Corp.*, 840 F. Supp. 2d 6 (D.D.C. 2012), for example, plaintiff was awarded "$72.25 in overtime pay" after he established that he "worked 8.5 hours of overtime for which he was paid at his hourly rate of $17 per hour rather than at a time-and-a-half rate." *Id.* at 8.

Rather, Driscoll claims that his firing was motivated by his internal complaints about overtime pay to university officials.

> The relevant FLSA provision makes it unlawful
>
> to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee . . . .

29 U.S.C. § 215(a)(3).  As this Court has noted in the past, courts are somewhat divided as to "whether an informal or internal complaint qualifies as 'any complaint' within the meaning of § 215(a)(3)," *Hicks v. Association of American Medical Colleges*, 503 F. Supp. 2d 48, 51 (D.D.C. 2007), and the D.C. Circuit has yet to address the issue.  Yet, "the majority of circuits to consider the question of whether intracompany complaints are protected activity within the meaning of 'filed any complaint' have answered in the affirmative."  *Minor v. Bostwick Labs., Inc.*, 669 F.3d 428, 438 (4th Cir. 2012) (adopting this holding and citing decisions from the First, Third, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh circuits).  This Court agrees.

Under this standard, Driscoll's allegations are more than sufficient.  The FLSA's retaliation provisions "'require[] fair notice' to employers" and "'some degree of formality.'"  *Id.* at 439 (quoting *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1334 (2011)).  Here, Driscoll alleges that he "wrote a series of emails to GWU's Human Resources department questioning GWU's use of the FLSA's half-time method of calculating overtime and the initial FLSA exempt classification of his position" and "asserted that he was not being paid for all the overtime hours he had worked."  (Second Am. Compl. ¶ 57.)  He followed up with emails to the [GWU's] Director of Compensation.  (*Id.* ¶ 58.)  He "directed Human Resources not to deposit the back overtime wage offer into his direct deposit account because he was

challenging" GWU's calculations (*id.* ¶ 59), and when the deposit was nonetheless made, he "spoke with the Director of Compensation." (*Id.* ¶ 60.) Driscoll subsequently "wrote the Human Resources representative and the Director of Communication . . . with evidence that he had worked more overtime hours than GWU had included in his back overtime pay" and "challenged GWU's original exempt classification of his position." (*Id.* ¶ 61.) Finally, Driscoll alleges that "GWU discriminated against [him] by discharging him because he questioned its payment of back overtime wages." (*Id.* ¶ 69.) The Court concludes that these allegations are sufficient to state a claim under the FLSA for retaliation.

### C.   Third Cause of Action: Individual and Collective-Action and/or Class-Action Claims under the DCMWA

GWU argues that Driscoll's Third Cause of Action fails as a matter of law by attempting to bring an opt-out class action under Rule 23 that alleges violations of the DCMWA, when the DCMWA provides explicitly for opt-in, collective actions.[3] *See* D.C. Code § 32-1012(b) ("No employee shall be a party plaintiff to any action brought under [the DCMWA] unless the employee gives written consent to become a party . . . .").

GWU's motion presents a difficult question. Many courts have considered whether a FLSA opt-in collective action can be brought alongside an opt-out class action under state law and Rule 23, where the relevant state laws have no specific class- or collective-action provisions. *See Knepper*, 675 F.3d at 264–65 (collecting cases). However, the Court has found no decision

---

[3] Separately, GWU argues that Driscoll's factual allegations do not state a claim for relief under the DCMWA. The Court rejects GWU's arguments for the reasons stated above (*see supra* Section II(A)) with regard to Driscoll's First Cause of Action under the FLSA. *See Thompson v. Linda And A., Inc.*, 779 F. Supp. 2d 139, 146 (D.D.C. 2011) ("With respect to employers' liability," the DCMWA and the DCWPCL "are construed consistently with the FLSA." (collecting cases)).

addressing whether Rule 23 allows a plaintiff to bring an opt-out class action under a state law

provision that mandates a more restrictive opt-in collective action.[4]

Yet, "the framework for" deciding this question is "familiar." *Shady Grove Orthopedic*

*Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1437 (2010) (plurality opinion).  The Court

"must first determine whether Rule 23 answers the question in dispute," *id.*, *i.e.*, whether Rule 23

would allow Driscoll to bring his claims as an opt-out class action.  "If it does, it governs—

[D.C.'s] law notwithstanding—unless it exceeds statutory authorization or Congress's

rulemaking power," *id.*, in this case because its application would "abridge, enlarge, or modify

a[] substantive right" conferred by the DCMWA in violation of the Rules Enabling Act.  28

U.S.C. § 2072(b).

At the first stage of this inquiry, it is clear that Rule 23 answers the question in dispute.

As the Supreme Court held in *Shady Grove*, Rule 23 "categorical[ly] . . . entitle[s] a plaintiff

whose suit meets the specified criteria to pursue his claim as a class action."  130 S. Ct. at 1437

(plurality opinion); *see also id.* at 1448 (Stevens, J., concurring) (joining Justice Scalia's opinion

as to Parts I and II-A).[5]  Rule 23 "provides a one-size-fits-all formula for deciding the class-

action question," *id.* at 1437, whereas the DCMWA's opt-in provision "attempts to answer the

---

[4] Contrary to GWU's argument (*see* GWU Opp'n at 16–18), courts treat D.C. Code provisions as
though they were state law for purposes of preemption analysis.  *See Dist. Properties Ass'n v.
Dist. of Columbia*, 743 F.2d 21, 26 (D.C. Cir. 1984); *see, e.g.*, *Cephas v. MVM, Inc.*, 520 F.3d
480, 485 (D.C. Cir. 2008); *CSX Transp., Inc. v. Williams*, 406 F.3d 667, 674 (D.C. Cir. 2005).

[5] Justice Scalia's opinion for the plurality in *Shady Grove* controls at the "first step" of the *Shady
Grove* analysis.  *See 3M Co. v. Boulter*, 842 F. Supp. 2d 85, 94–95 & n.7 (D.D.C. 2012).
However, because Justice Stevens's concurrence sets forth a narrower ground as to the second
step of the *Shady Grove* analysis than does Justice Scalia's opinion, *see* 130 S. Ct. at 1448–55,
this Court agrees with the parties (*see* GWU Opp'n at 9; Driscoll Reply at 13) that Justice
Stevens's concurrence controls for that step.  *See Marks v. United States*, 430 U.S. 188, 193
(1977); *see, e.g.*, *McKinney v. Bayer Corp.*, 744 F. Supp. 2d 733, 744–47 (N.D. Ohio 2010); *In
re Wellbutrin XL Antitrust Litig.*, 756 F. Supp. 2d 670, 673–75 (E.D. Pa. 2010).

same question—*i.e.*, it states that [Driscoll's] suit" may not be brought as a collective action

unless all plaintiffs "give[] written consent to become a party."  D.C. Code § 32-1012(b).

Therefore, the Court turns to the second step of the *Shady Grove* analysis, and considers

whether the DCMWA's opt-in provision confers substantive rights that application of Rule 23 in

this context would abridge, in violation of the Rules Enabling Act.  The DCMWA's opt-in

provision parrots that of the FLSA.  *Compare* D.C. Code § 32-1012(b), *with* 29 U.S.C. § 216(b).

Accordingly, because no court has addressed whether the DCMWA's opt-in provision confers

substantive rights for purposes of the *Shady Grove* and Rules Enabling Act analyses, the Court

considers decisions addressing the FLSA's opt-in provision.

Some courts, including the D.C. Circuit—albeit in passing and in dicta—have described

the FLSA's opt-in requirement as procedural, not substantive.  *See Smith v. T-Mobile USA Inc.*,

570 F.3d 1119, 1122 (9th Cir. 2009) (describing the "distinctions between a FLSA collective

action and a Rule 23 class action" as "structural" but describing any rights afforded as

"procedural"); *Lindsay v. Gov't Emps. Ins. Co.*, 448 F.3d 416, 424 (D.C. Cir. 2006) (describing

the difference "between the opt-in procedure under section 216(b) and the opt-out procedure

under Rule 23(c)(2)(B)" as "mere[ly] *procedural*"); *Espenscheid v. DirectSat USA, LLC*, 708 F.

Supp. 2d 781, 793 (W.D. Wis. 2010) ("It is 'more natural to see the opt-in provisions of the

FLSA . . . simply as procedural mechanisms for vindication of the substantive rights provided by

the FLSA.'" (quoting *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 164–65 (S.D.N.Y. 2008)

(holding that the opt-in procedures of the FLSA are procedural, not substantive))); *see also Long

John Silver's Rests., Inc. v. Cole*, 514 F.3d 345, 351 (4th Cir. 2008) (in holding that the opt-in

procedure could not be waived by parties' agreement to an alternate arbitration procedure, stating

that "no court has explicitly ruled that the 'opt-in' provision of the [FLSA] creates a substantive,

nonwaivable right").

Other courts have disagreed.  *See Monahan v. Smyth Auto., Inc.*, No. 1:10-cv-048, 2011 WL 379129, at *11 (S.D. Ohio Feb. 2, 2011) (describing the "right of the FLSA opt-in procedure" as "substantive"); *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2009 WL 2766991, at *6 (N.D. Ohio Aug. 27, 2009) ("The opt-in requirement is substantive because it 'is the device by which . . . rights are secured,' as it prevents employees from 'hav[ing] their rights litigated without their knowledge and express consent' and generally reduces the number of plaintiffs in a representative suit against a business.'" (quoting *Ellis v. Edward D. Jones & Co., L.P.*, 527 F. Supp. 2d 439, 456 & n.18 (W.D. Pa. 2007))); *Ellis*, 527 F. Supp. 2d at 455–60 (concluding, after a lengthy analysis, that the opt-in requirement is substantive); *Zelinsky v. Staples, Inc.*, No. 08-cv-684, 2008 WL 4425814, at *4 (W.D. Pa. Sept. 29, 2008) ("the decision to authorize an opt-in versus opt-out class represents substantive policy").

The Court concludes that the DCMWA's opt-in mechanism confers substantive rights such that application of Rule 23 in these circumstances would violate the Rules Enabling Act. The opt-in requirement "is part of [D.C.'s] framework of substantive rights or remedies." *Shady Grove*, 130 S. Ct. at 1449 (Stevens, J., concurring).  Although § 32-1012(b) may be "undeniably 'procedural' in the ordinary sense of the term," it "exist[s] to influence substantive outcomes." *Id.* at 1450 (citations and some internal quotation marks omitted).  Namely, it provides that employees' claims can only be litigated where the employees have affirmed their intent to be bound, and it establishes that employers have a right not to be sued in representative actions absent each plaintiff employee's consent.  "When a [s]tate chooses to use a traditionally procedural vehicle as a means of defining the scope of substantive rights or remedies, federal courts must recognize and respect that choice." *Id.*  Furthermore, "[u]nlike the New York law"

13

that the Supreme Court determined to be procedural "in *Shady Grove*," the DCMWA's opt-in

provision "is not contained in a generally applicable procedural rule but, rather, in the same

paragraph of the same statute that creates the underlying substantive right." *In re Digital Music*

*Antitrust Litig.*, 812 F. Supp. 2d 390, 416 (S.D.N.Y. 2011) (applying Illinois class-action

limitation contained in Illinois Antitrust Act and holding that Rule 23 was *ultra vires* under

*Shady Grove*).

The Court concludes that the DCMWA's opt-in provision "is so intertwined with a state

right or remedy that it functions to define the scope of the state-created right." *Shady Grove*, 130

S. Ct. at 1452 (Stevens, J., concurring).  Therefore, the Court will deny Driscoll's motion to

amend with regard to his attempt to bring a Rule 23 class action under the DCMWA in his Third

Cause of Action.

> ### D.     Fourth Cause of Action: Individual and Class-Action Claims under the DCWPCL

GWU argues that, under D.C. law, Driscoll's Fourth Cause of Action must be dismissed

because his sole remedy for the injuries he alleges lies under the DCMWA.  Driscoll claims, to

the contrary, that the DCWPCL applies.  The parties' disagreement turns on a question of fact:

whether GWU ever conceded that it owed Driscoll and other similarly-situated employees

overtime.  Regardless of whether such a concession occurred or, more importantly, whether it is

relevant to GWU's liability under the DCWPCL, the Court concludes that the proposed second

amended complaint adequately alleges a violation of the DCWPCL.

The DCWPCL provides that "[e]very employer shall pay all wages earned to his

employees at least twice during each calendar month, on regular paydays designated in advance

by the employer," D.C. Code § 32-1302, and "provides a cause of action for employees to

recover unpaid wages." *Fudali v. Pivotal Corp.*, 310 F. Supp. 2d 22, 26 (D.D.C. 2004) (internal

quotation marks and citation omitted).  The law "broadly defines 'wages' as 'monetary

compensation after lawful deductions, owed by an employer for labor or services rendered,

whether the amount is determined on a time, task, piece, commission, or other basis of

calculation.'"  *Ventura v. Bebo Foods, Inc.*, 738 F. Supp. 2d 8, 20 (D.D.C. 2010) (quoting D.C.

Code § 32-1301(3)) (emphasis deleted).  Driscoll's DCWPCL claim is basically the same as his

DCMWA claim: namely, that Driscoll and other similarly-situated employees earned overtime

wages but GWU, acting intentionally, willfully, and in bad faith, did not pay them.  (*See* Second

Am. Compl. ¶¶ 4, 43–56.)  Per the terms of the statute, this suffices.

     GWU protests that "there exists a bona fide dispute concerning the amount of wages

due," such that it is exempt from liability under the DCWPCL.  D.C. Code § 32-1304; *see*

*Fudali*, 310 F. Supp. 2d at 24, 27–29.  In particular, GWU alleges that "[a]t all times, [it] timely

paid [Driscoll] the wages that [it] conceded to be owed to him."  (Def. Mot. at 14.)  Driscoll

responds by arguing that GWU implicitly conceded that it owed the employees overtime by

making certain back payments to them when it reclassified them.  But allegations regarding these

arguments are not to be found in Driscoll's complaint, nor has GWU claimed that proof of a

bona fide dispute as to Driscoll's eligibility for overtime pay has been incorporated by reference

or is susceptible of judicial notice at this stage of the litigation.  In addition, GWU has not argued

that it has "give[n] written notice to the employee of the amount of wages which [it] concedes to

be due," which it must do to take advantage of the exemption from liability.  D.C. Code § 32-

1304.  Ultimately, the allegations in Driscoll's proposed second amended complaint—which are

all that the Court can consider at this stage—do not themselves establish that GWU is eligible for

the § 32-1304 exemption.  Furthermore, this is not the appropriate juncture to decide the difficult

state law question of whether the DCMWA is Driscoll's sole remedy for his overtime claims because, pursuant to the DCWPCL's text, Driscoll has alleged a violation of the statute.

## CONCLUSION

For the reasons stated, the Court will deny GWU's motion to dismiss and grant in part and deny in part Driscoll's motion to amend.  The motion to amend is granted as to the First, Second, and Fourth causes of action, and denied as to Driscoll's attempt to bring a Rule 23 class action in his Third Cause of Action.  A separate Order accompanies this Memorandum Opinion.

_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

Date:   September 10, 2012